**Jean COULTER, Petitioner**

**v.**

**PENNSYLVANIA BOARD OF PROBATION AND PAROLE, Respondent.**

Commonwealth Court of Pennsylvania.

Submitted on Briefs May 25, 2012.

Decided June 14, 2012.

Jean Coulter, pro se.

John J. Talaber, Assistant Counsel, Harrisburg, for respondent.

BEFORE: PELLEGRINI, President Judge, and BROBSON, Judge, and COLINS, Senior Judge.

OPINION BY President Judge PELLEGRINI.

Jean Coulter (Coulter) has filed a *pro se* appeal from the final determination of the Office of Open Records (OOR) finding that the Pennsylvania Board of Probation and Parole (Board) met its burden of proving that the records she requested relative to her "Home Plans" were exempt from disclosure under the Right–To–Know Law (RTKL)[1] because they were not public records. For the reasons that follow, we affirm the OOR's decision.

Coulter is currently on parole. On October 6, 2011, Coulter submitted a RTKL request to the Board seeking "Home Plan"[2] records which she had submitted to Board agents relating to the investigation of residences at which she had sought to live.[3] The request specified:

> I am looking for records related to ALL of the Home Plans submitted in my case. I have submitted multiple Home Plans, and they have been rejected. I am asking to see the ORIGINAL records and reports from the Investigating Agents, as well as versions of the records provided to their Supervisors-and the final records which were submitted to my local agent.

(Original Record at Tab 1, p. 1.) The Board denied her request by letter dated October 14, 2011, stating that the records she sought were not "public" records pursuant to:

- 65 P.S. § 67.305(a)(3)[4]—Records, reports, or other written things and information, evaluations, opinions, and voice recordings in the Board's custody or

---

1. Act of February 14, 2008, P.L. 6, 65 P.S. §§ 67.101–67.3104.

2. A "Home Plan" is part of a parolee's Plan of Supervision and helps determine where the parolee will live while on parole. The "Home Plan" must be approved by the Board. *See e.g., Barge v. Pennsylvania Board of Probation and Parole*, 39 A.3d 530 (Pa.Cmwlth.2012). "Plan of Supervision" is defined as "the terms, under which an offender will be supervised, *including proposed residence*, proposed employment or viable means of support and the terms and conditions of supervisions." (Emphasis added.) (Board's website visited May 25, 2012, @ www.pbpp.state.pa.us; *see* "Understanding Pennsylvania Parole" then *see* "The Parole Dictionary" for definitions.)

3. According to the Board's brief at pp. 4–5, Coulter is on "special probation" under the supervision of the Board. It alleges that "special probation" is a type of probation imposed by a court having criminal jurisdiction which, by special order, directs the Board, pursuant to the Prisons and Parole Code, 61 Pa.C.S. § 6133, to supervise the offender. 61 Pa.C.S. § 6133(a) provides:

> (a) **General rule.** The board shall have exclusive power to supervise any person placed on probation by any judge of a court having criminal jurisdiction, when the court by special order directs supervision by the board.

In a "special probation" case, the criminal jurisdiction retains probation revocation authority. "Agents are in a supervisory relationship with their offenders. The purpose of the supervision is to assist the offenders in their rehabilitation and re-assimilation into the community and to protect the public." 61 Pa.C.S. § 6153. In supervising the special probationer, the Board makes, collects and retains reports as provided by law. 61 Pa. C.S. § 6131(a). Although the Board makes this allegation, there is nothing in the certified/original record provided to support that Coulter is on "special probation," what crime she had committed or what special conditions exist, if any, while she is on parole.

4. Section 305(a)(3) of the RTKL, 65 P.S. § 67.305(a)(3).

possession touching on matters concerning a probationer or parolee are private, confidential, and privileged. *See* 37 Pa. Code § 61.2;[5] and

- 65 P.S. § 67.305(a)(1)[6] because they are related to the Board's duties in conducting non-criminal investigation information. *See* 65 P.S. § 67.708(b)(17).[7]

Coulter appealed this determination to the OOR arguing that the records were not private and confidential because she believed their contents had been released to third parties.[8]

■■■ By final determination issued on November 23, 2011, the OOR denied the appeal after finding that the requested records were protected by the Board's regulation at 37 Pa.Code § 61.2 because the records contained in Coulter's request were part of her parole file. The OOR further found that the Board had not waived any argument that the records were confidential just because some of the information may have been released *to* third parties stating:

> [A]n agency has the authority to disclose an otherwise exempt record under the RTKL. *See* 65 P.S. § 67.506(c); *see also Sarr v. Sexual Offender Assessment Board*, OOR Dkt. AP 2009–0958 [2009 WL 6504594], 2009 PA O.O.R.D. LEXIS 740 ("If the agency chooses to exercise its discretion to release this report, it has authority under the law to do so. Otherwise, the ... agency is permitted to withhold release of this record."). Therefore, the fact that the Board may have disclosed otherwise exempt records to a third party does not make those records public under the RTKL. As the requested records are exempt under the RTKL pursuant to the Code, the OOR does not need to address the other exemptions raised by the Board.

(OOR's November 23, 2011 decision at 4, Original Record at Tab 8.) This appeal by Coulter followed.[9]

---

5. 37 Pa.Code § 61.2 provides the following regarding Confidentiality of Records:

> Records, reports and other written things and information, evaluations, opinions and voice recordings in the Board's custody or possession touching on matters concerning a probationer or parolee are private, confidential and privileged; except that a brief statement of the reasons for actions by the Board granting or refusing a parole will at all reasonable times be open to public inspection in the offices of the Board.

6. Section 305(a)(1) of the RTKL provides:

> (a) **General rule.** A record in the possession of a Commonwealth agency or local agency shall be presumed to be a public record. The presumption shall not apply if:
> (1) The record is exempt under section 708 (relating to public records.)

7. The Board also denied her request based on Section 708(b)(16) of the RTKL, 65 P.S. § 67.708(b)(16), relating to the Board's duties in gathering criminal investigation information, but when Coulter appealed to this Court, the Board withdrew its objection based on that section.

8. The OOR notified both parties that the appeal was assigned to an appeals officer and the record would close in seven business days from November 3, 2011. The Board provided the OOR with a position statement and then requested an evidentiary hearing, which was denied.

9. Our scope of review under the RTKL is plenary. *Stein v. Plymouth Twp.*, 994 A.2d 1179, 1181 n. 4 (Pa.Cmwlth.2010). In *Bowling v. Office of Open Records*, 990 A.2d 813 (Pa.Cmwlth.2010) (en banc), *appeal granted*, 609 Pa. 265, 15 A.3d 427 (2011), we concluded that our standard of review under the RTKL is as follows: "A reviewing court, in its appellate jurisdiction, independently reviews [Open Records'] orders and may substitute its own findings of fact for that of the agency." *Id.* at 818. Further, "a court reviewing an appeal from a [decision of an Open Records] hearing officer is entitled to the broadest scope of review." *Id.* at 820. Under this broad standard, we review "the

■ Not disputing that the records are exempt from disclosure under 65 P.S. § 67.305(a)(3) because 37 Pa.Code § 61.2 makes records touching on matters concerning a probationer or parolee private, Coulter first contends that the Board is estopped from arguing that her Home Plans are not subject to disclosure because the Board previously released information regarding her file to third parties. As a result, she contends the Board is barred from asserting that the records are private, confidential and privileged under 37 Pa.Code § 61.2. Because providers have been given information from her files for rejection of her Home Plan, Coulter argues that she should also be given access to her files so that she can find out the real reasons why the Home Plans have been rejected in order to assist her with obtaining Board approval of a subsequent Home Plan.[10]

The Board, however, contends that it has never released any documents related to Coulter's parole, e.g., records of confidentiality, but only some information from Coulter's Home Plans to ascertain the appropriateness of her choice of residence. Because the Board necessarily has to release information to make determinations, even if the doctrine of estoppel had any applicability, it is not made out here because the documents sought were not released. Moreover, estoppel as a doctrine does not apply to RTKL requests because

whether a document is a public document or exempt, that character does not change just because the agency releases some information contained in the document. We note that while Coulter is requesting her own Home Plans, if all Home Plans were considered public records, they would be open to the entire public at large which could have adverse effects on all parolees.

Even if we held that the Board was estopped from claiming the documents were subject to disclosure under 65 P.S. § 67.305(a)(3), the information sought would still not be subject to disclosure under Section 708(17)(b) of the RTKL, 65 P.S. § 67.708(17)(b), which provides:

(b) **Exceptions.** Except as provided in subsections (c) and (d), the following are exempt from access by a requester under this act:

*   *   *

(17) A record of an agency relating to a noncriminal investigation, including:

*   *   *

(ii) Investigative materials, notes, correspondence and reports.

Under this provision, Coulter was not entitled to the documents requested because the information requested was records of a noncriminal investigation to determine whether Coulter's Home Plans were appropriate.

---

record on appeal" which includes: the request for public records, the agency's response, the appeal, the hearing transcript, and the final written determination of the appeal's officer. *Id.* at 820–21. Additionally, this Court may review other material, including party stipulations and also may conduct an in-camera review of the documents at issue. *Id.* at 820–23. Finally, we may supplement the record by conducting a hearing or direct such supplementation by remanding the matter to Open Records. *Id.* at 823 n. 11.

10. Coulter also contends that the refusal of the Board to release her records is in clear violation of the intent of the legislature to "prohibit secrets, scrutinize the actions of public officials and make public officials accountable for their actions." *Bowling.* She states that by prohibiting her from accessing her own probation records, despite previously releasing the same information to third parties, the Board is clearly not acting to protect the confidentiality of her files and is acting solely for the purpose of concealing the actions of public employees.

Accordingly, the order of the OOR is affirmed.

**ORDER**

AND NOW, this 14th day of June, 2012, the order of the Office of Open Records, dated November 23, 2011, is affirmed.